UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
2012 MAR -1 PM 4: 43

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

v.

NATHAN BETANCES

CASE NO. 6:12-cr- 49-oRL-18-GJK
18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C) – Forfeiture
28 U.S.C. § 2461(c) – Forfeiture

### INFORMATION

The United States Attorney charges:

### COUNT ONE
### (CONSPIRACY)

#### A. INTRODUCTION

At all times material to this Information:

1. Trader's International Return Network (TIRN) was a Panamanian corporation created by defendant **NATHAN BETANCES**, David Merrick (Merrick), and their co-conspirators in May 2008, and was headquartered in Panama City, Panama. It claimed on its website that it had offices in Switzerland, Kuala Lumpur, Malaysia, and Dubai. TIRN was not a corporation or business registered in the United States and was never registered with the Securities Exchange Commission (SEC). Merrick was President of TIRN and served as TIRN's investment adviser. Defendant **NATHAN BETANCES** was a promoter.

2. MS, Inc. ("MS"), GTT Services, Inc. ("GTT"), MDD Consulting, Inc. ("MDD"), and Go Tourism LLC ("Go Tourism") were shell companies used by defendant **NATHAN BETANCES**, Merrick, and their co-conspirators.

3. MS was a Florida corporation with its principal place of business in Maitland, Florida. According to its articles of incorporation, MS was incorporated on January 28, 2008, and was purportedly in the business of "IT marketing services." Investors in TIRN deposited their funds in an account in the name of MS, Inc. On February 11, 2009, defendant **NATHAN BETANCES** became the president of MS, Inc. Thereafter, on May 11, 2009, **NATHAN BETANCES** was removed as a corporate officer of MS.

4. MDD Consulting, Inc. was a Florida corporation with its principal place of business in Apopka, Florida. The business purpose of MDD is unknown; its articles of incorporation stated that the purpose for which it is organized is "any and all lawful business." MDD was incorporated on February 2, 2009. Merrick was the President.

5. Go Tourism LLC was a Florida corporation with its principal place of business in Margate, Florida. According to its articles of incorporation, Go Tourism was purportedly in the business of "marketing e-tourism." Merrick was President of Go Tourism from its incorporation on January 15, 2008 to May 23, 2008, when he removed himself as President and became Vice-President.

6. GTT Services Inc. was a Florida corporation with its principal place of business in Orlando, Florida. The business purpose of GTT is unknown; its articles of incorporation stated that the purpose for which it is organized is "any and all lawful business." Merrick was President of GTT from its incorporation on January 29, 2008 to April 30, 2009.

7. Merrick was the authorized signatory for accounts at numerous banks in the names of MS, GTT, Go Tourism, and MDD. Neither defendant **NATHAN BETANCES**, Merrick, nor any of their co-conspirators held any securities licenses and have never been registered with the SEC in any capacity.

### B. THE AGREEMENT

8. From no later than May 2008, and continuing thereafter through in or about October 2009, in Orange County, Florida, in the Middle District of Florida, and elsewhere,

### NATHAN BETANCES

the defendant herein, did knowingly and willfully combine, conspire, confederate, and agree, with others both known and unknown to the United States Attorney, to commit offenses against the United States, to-wit: Wire Fraud, in violation of Title 18, United States Code, Section 1343; Money Laundering, in violation of Title 18, United States Code, Section 1957; Securities Fraud, in violation of Title 15, United States Code, Section 78j(b), and Rule 10b-5 (17 C.F.R. Section 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission; and Sales of Unregistered Securities, in violation of Title 15, United States Code, 77e(a).

### C. MANNER AND MEANS OF THE CONSPIRACY

9. The substance of the conspiracy included, among other things, the following:

a. It was a part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did incorporate Trader's International Return Network (TIRN) as a Panamanian corporation, and would and did claim on its website that it had offices in Switzerland, Kuala Lumpur, Malaysia, and Dubai.

b. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did use MS, Inc. ("MS"), GTT Services, Inc. ("GTT"), MDD Consulting, Inc. ("MDD"), and Go Tourism LLC ("Go Tourism") as shell companies.

c. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would offer and sell securities in TIRN in the form of investment contracts to investors.

d. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did have TIRN investors deposit their funds in an account in the name of MS.

e. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did serve as the investment advisers to TIRN even though they were registered with the Securities and Exchange Commission (SEC) as investment advisers.

f. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did represent to prospective and actual investors that TIRN was a private investment club.

g.  It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did represent on TIRN's website that TIRN pools investors' funds and uses "multiple investment companies, proprietary computer software programs, and professional investment partners and individual traders" to invest TIRN's funds "on a global basis and diversified into many different types of investments such as International Bonds, International Currency Exchange, International Stock Markets, and many other types of investment vehicles, including currency trading (Forex), precious metals, retail real estate, and energy investments.

h.  It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did solicit investors throughout the United States, including Florida, California, and Texas, and throughout the world, including Mexico and Serbia, online through at least one of TIRN's websites, www.mytirn.com, as well as in person through lunch and dinner seminars and group presentations.

i.  It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators did advertise to investors on TIRN's website and at various public engagements, false monthly dividends earned by TIRN investors in order to induce investment with TIRN.

j.  It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did conduct free lunch

seminars in Florida and Tennessee in May, June, and July, 2009, in order to induce investment with TIRN.

 k. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did intentionally mislead their investors with oral and written misrepresentations by telling them their money would be spent on Forex, international bonds, international stock market and other investments, when, in fact, defendant **NATHAN BETANCES**, Merrick, and their co-conspirators transferred the money to their own personal checking accounts and to accounts unrelated to TIRN's operations that they controlled.

 l. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did open bank accounts in Panama, Switzerland, and Hong Kong.

 m. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did falsely advise investors that TIRN "utilize[s] professional outside sources to invest [TIRN's] portfolio, some using proprietary software" and was exempt from federal securities laws.

 n. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did falsely state that TIRN partially owned a trading firm and used twelve traders at this firm and proprietary software to invest.

o.   It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did tell investors they would receive 9% to 22% monthly dividends.

p.   It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did fail to disclose that those dividends to which reference is made in paragraph 9(o) would come from other investors' money, as opposed to TIRN's investment profits.

q.   It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick and their co-conspirators would and did create GTT Services bank accounts at Chase/WAMU to accept wires/funds from TIRN investors.

r.   It was a further part of the conspiracy that from at least May 2008 through December 2008, defendant **NATHAN BETANCES**, Merrick, and their conspirators would and did instruct investors to deposit their funds in a Bank of America account in the name of MS.

s.   It was a further part of the conspiracy that, in December 2008, defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did e-mail investors and instruct them to stop depositing funds in the MS account and instruct investors to deposit funds in accounts in the name of GTT at Washington Mutual or Regions Bank.

t.   It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did authorize the transfer of

investor funds deposited in the MS and GTT accounts at these banks to other banks in the names of MS, GTT, MDD, and Go Tourism.

u. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did fail to use investor funds for investments in securities or other investments, as represented.

v. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would not and did not transfer any investor funds to a trader or other investment agent who was to invest such funds and then distribute the proceeds and/or principal to investors.

w. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did misappropriate investor funds in a Ponzi scheme.

x. It was a further part of the conspiracy that Merrick would and did write checks in amounts of, and wire transferred to himself, at least $2.4 million in TIRN investor funds from the MS, GTT, and other accounts and charged at least $1.3 million in personal expenditures, such as travel, dining, and entertainment, on credit cards in the names of MS and GTT, for a total of at least $3.7 million.

y. It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did authorize the transfer of at least $8.8 million of investor funds to Anres Technologies Corporation ("Anres"), a privately-owned company that distributed and marketed stored value or pre-paid debit cards, to repay other investors in a Ponzi scheme.

z.  It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did represent that an investor who wished to withdraw his or her funds would receive a pre-paid VISA debit card provided by Anres loaded with the investor's initial investment and return on the investment, and could be used at any ATM worldwide.

aa.  It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did not tell investors that the money loaded on the Anres debit card was other investors' money.

bb.  It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did authorize the transfer of at least $2.3 million from the MS and GTT accounts under the control of defendant NATHAN BETANCES, Merrick, and their co-conspirators to accounts in Panama, Mexico, Malaysia, Switzerland, and the Netherlands.

cc.  It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did operate MS, GTT, MDD, and Go Tourism as an "alter ego" in this Ponzi scheme.

dd.  It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did direct investors to deposit their funds into the MS and GTT accounts.

ee.  It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did authorize transfer of funds from these accounts to the MDD and Go Tourism accounts.

ff.     It was a further part of the conspiracy that defendant **NATHAN BETANCES**, Merrick, and their co-conspirators would and did use MS, GTT, MDD, and Go Tourism to misappropriate investors' funds and to continue the Ponzi scheme.

### D. OVERT ACTS

10.     In furtherance of the conspiracy, and to effectuate its objectives, the following overt acts, among others, were committed within the Middle District of Florida, and elsewhere:

a.      On June 16, 2008, defendant **NATHAN BETANCES**, Merrick, and their co-conspirators incorporated Trader's International Return Network (TIRN) as a Panamanian corporation headquartered in Panama City, Panama.  Defendant **NATHAN BETANCES** was listed as the Treasurer.

b.      On or about September 18, 2008, defendant **NATHAN BETANCES** spoke telephonically with a potential TIRN investor about the TIRN business plan.

c.      On November 10, 2008, defendant **NATHAN BETANCES** deposited a $2,000.00 check into his Washington Mutual (WAMU) bank account, no. xxxxxx3172, from GTT Services' WAMU bank account no. xxxxxx6234.

d.      On November 24, 2008, defendant **NATHAN BETANCES** deposited a $2,000 check into his WAMU bank account, no. xxxxxx3172, from GTT Services' WAMU bank account no. xxxxxx6234.

e.      On January 5, 2009, defendant **NATHAN BETANCES** deposited two checks, one for $6,000.00 and one for $2,000.00 into his WAMU bank account, no. xxxxxx3172, from GTT Services' WAMU bank account no. xxxxxx6234.

f.  On January 27, 2009, defendant **NATHAN BETANCES** deposited a $4,000.00 check into his WAMU bank account, no. xxxxxx3172, from GTT Services' WAMU bank account no. xxxxxx6234.

g.  On February 3, 2009, defendant **NATHAN BETANCES** deposited a $2,000.00 check into his WAMU bank account, no. xxxxxx3172, from MS, Inc.'s Mercantile Bank account, no. xxxxxx3683.

h.  On February 11, 2009, defendant **NATHAN BETANCES** became the president of MS, Inc.

i.  From on or about May 16, 2009 to May 19, 2009, defendant **NATHAN BETANCES**, Merrick, and their co-conspirators traveled to Antigua to a TIRN International Conference to promote the scheme.

j.  On July 17, 2009, defendant **NATHAN BETANCES** directed Merrick to wire transfer $16,689.00 to a TIRN member, which Merrick did the morning of July 17, 2009.

k.  On July 21, 2009, defendant **NATHAN BETANCES** wire transferred $150,000.00 into GTT Services account no. xxxxxx6234 from another "TIRN" bank account.

l.  On or about July 22, 2009, defendant **NATHAN BETANCES**, Merrick, and their co-conspirators traveled to Antigua to a TIRN International Conference to promote the scheme.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE**

1. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. From his engagement in the violations alleged in Count One of this Information, punishable by imprisonment for more than one year, the defendant

**NATHAN BETANCES**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all of his interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations. Specifically, the defendant shall be subject to:

> A forfeiture money judgment of at least $15,000,000.00, representing the amount of proceeds obtained as a result of the conspiracy charged in Count One.

5. If any of the property described above, as a result of any act or omission of the defendant:

> a. cannot be located upon the exercise of due diligence;
>
> b. has been transferred or sold to, or deposited with, a third party;
>
> c. has been placed beyond the jurisdiction of the court;
>
> d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

ROBERT E. O'NEILL
United States Attorney

By: *[signature]*
Roger B. Handberg
Assistant United States Attorney

By: *[signature]*
Carlos A. Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division